**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RICHARD ZOBON BAXTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     **Case No. 11-CV-0194-CVE-TLW** |
| | ) |
| ERIC FRANKLIN, Warden, | ) |
| | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner, a state inmate appearing pro se. Respondent filed a response (Dkt. # 8), and provided the state court records necessary for adjudication of Petitioner's claims (Dkt. # 8, 10). Petitioner filed a reply (Dkt. # 15). For the reasons discussed below, the Court denies the petition for writ of habeas corpus.

### BACKGROUND

On May 10, 2007, Joshua Aaron Bogue agreed to help a friend by giving a ride to a man, later identified as Petitioner Richard Zobon Baxter, to the Sugarberry Apartments, located in Tulsa, Oklahoma. (Dkt. # 10-1, Tr. Vol. II at 283-86). After arriving at the apartment complex, Bogue remained in his car while Petitioner attempted to purchase $2,900 worth of cocaine from two men who were waiting in the parking lot of the apartment complex. Id. at 290. Bogue watched Petitioner hand over the cash to one of the two men who promptly left without giving Petitioner anything in exchange. Id. at 292. After Petitioner handed over the money, Bogue started to leave and Petitioner said, "Don't leave. I am using you for collateral." Id. After 5-10 minutes, when the man failed to return, Petitioner got back into Bogue's car and told Bogue to drive around the apartment complex

in search of the man.  Id. at 293.  As he drove, Bogue observed Petitioner pull out a gun, slide in a clip, and chamber a bullet.  Id. at 294, 334-338.

After unsuccessful attempts to find the man or Petitioner's money, Petitioner ordered Bogue to drive to Bogue's house.  Instead, Bogue offered to telephone his mother and ask her to write a check for the $2,900.  Id.  Bogue called his mother and asked her to meet him at a Wal-Mart store located in Broken Arrow, a suburb of Tulsa.  Id. at 297.  While on the way to Wal-Mart, Bogue claimed Petitioner demanded all his money and Bogue gave Petitioner $100 from his wallet.  Id. at 299.

After talking to Bogue and discerning that he was "in a dangerous situation," Bogue's mother called another son, Ryan Mitchell.  Id. at 381.  Mitchell told his mother to call police.  Mitchell and his friend, Aria Ebady-Nezami, immediately drove to the Wal-Mart to search for Bogue.  Id. at 388.  Mitchell spotted Bogue and Petitioner standing outside the front entrance to the store.  Id. at 385.  Bogue walked over to Ebady's truck and said, "[b]e careful.  He has got a gun, be cool."  Id.  While Ebady parked his truck, Mitchell, Bogue, and Petitioner went inside the Wal-Mart.  (Dkt. # 10-2, Tr. Vol. III at 429).

Meanwhile, Broken Arrow Police Officers Michael Golden and Brian Gerber arrived at the Wal-Mart.  After talking to Ebady in the parking lot, the officers entered the store and spotted Mitchell, Bogue, and Petitioner walking across the front, near the cashiers.  Id. at 469, 495.  Officers Golden and Gerber ordered the three men to raise their hands.  Id. at 470, 495.  Petitioner "clenched his waistband and took off running . . . through the store."  Id. at 470.  The officers chased Petitioner through the clothing department of the Wal-Mart, but briefly lost sight of him in the shoe section.  Officer Gerber saw Petitioner come out of the shoe department "no longer clutching at his waistband

[with] both arms pumping pretty good" as he ran out the store and through the parking lot. Id. at 497. Golden found Petitioner hiding in a dumpster behind an adjacent shopping center. In a search of Petitioner incident to arrest, police found no gun or money. Id. at 475. Police also searched the dumpster, parking lot, and the Wal-Mart for anything Petitioner may have discarded during the chase. Id. at 499, 507-509. However, no gun or money was recovered on May 10, 2007, the night of Petitioner's arrest. Id. at 509.

The next morning, May 11, 2007, Broken Arrow Police Detective Todd Geiger received a call from a Wal-Mart manager who reported that an employee found a gun at approximately 8:00 a.m. in the shoe department. Id. at 533. When Detective Geiger recovered the gun, it had a round in the chamber. Id. at 538. Later, Bogue identified the gun as the same he saw in Petitioner's possession at the apartment complex. (Dkt. # 10-2, Tr. Vol. II at 308).

Based on these events, Petitioner was charged in Tulsa County District Court Case No. CF-2007-2601. A jury found Petitioner guilty of Possession of a Firearm After Former Conviction of a Felony (Count II), but acquitted him of Robbery with a Firearm After Former Conviction of a Felony (Count I). (Dkt. # 8-3 at 1). The trial court sentenced Petitioner to a ten-year term of imprisonment. Attorney Brian Wilkerson represented Petitioner at trial.

Petitioner, represented by attorney Kimberly D. Heinze, perfected an appeal to the Oklahoma Court of Criminal Appeals (OCCA). Petitioner raised six (6) propositions of error, as follows:

Proposition I: Mr. Baxter was denied a fair trial before an unbiased jury by (1) the trial court's plain error in not removing a convicted felon and otherwise biased juror for cause as promised and (2) defense counsel's ineffectiveness in failing to verify his status and challenge the felon for cause or remove him with a peremptory challenge.

Proposition II: An evidentiary harpoon denied Mr. Baxter a fair trial.

| | |
|---|---|
| Proposition III: | Prejudicial details of appellant's prior conviction and the possibility that probation or parole might allow appellant to serve less time in prison than the jury imposed, acted to inflate the sentence. |
| Proposition IV: | Any failure to investigate and preserve issues for review was the result of the ineffective assistance of counsel. |
| Proposition V: | This court should remand this case to the district court with instructions to correct the judgment and sentence by an order nunc pro tunc. |
| Proposition VI: | Cumulative errors deprived Mr. Baxter of a fair trial and reliable verdict and sentence. |

(Dkt. # 8-1).  Petitioner sought to file a pro se supplemental brief on direct appeal, but his request was denied due to an incomplete affidavit by appellate counsel.  (Dkt. # 8-11).  In an unpublished Summary Opinion, filed July 21, 2009, in Case No. F-2008-421, the OCCA found that the trial court erred in failing to remove the convicted felon from the jury panel, but that the error was harmless because Petitioner failed to show harm or prejudice.   (Dkt. # 8-3 at 2).  Additionally, the OCCA found that the "introduction of previous probation and parole information, even through an otherwise properly admitted Judgment and Sentence, is error."  Id. at 5.  Again, however, the OCCA found the error was harmless because "it is clear from the verdict form that the jury intended to impose . . . the maximum sentence allowed by law."  Id. at 5-6.  The OCCA also agreed with Petitioner that the Judgment and Sentence reflected an incorrect and improperly enhanced offense, and, for that reason, remanded to the district court with instructions to correct the Judgment and Sentence nunc pro tunc.  Id. at 6-7.  After rejecting the remaining claims, the OCCA affirmed Petitioner's conviction and sentence.  Id. at 7.

On June 14, 2010, Petitioner filed an application for post-conviction relief.  Petitioner raised five (5) propositions, as follows:

| | |
|---|---|
| Proposition I: | Baxter 'was denied effective assistance of appellate counsel by appellate counsel filing a clearly defective affidavit in support of the Supplemended [sic] Brief filed by defendant.' |
| Proposition II: | Baxter's [sic] asserts 'the appellate courts' decision to deny the Pro Se Supplemental Brief submitted by the petitioner was erroneous and premature, in that, it deprived defendant of appeal.' |
| Proposition III: | Petitioner was 'denied a full appellate review of whether the evidence was sufficient to sustain his conviction for Possession of Firearms AFCF.' |
| Proposition IV: | 'This proposition is so closely related to my third proposition that self same arguments fully address [sic] the issues.' |
| Proposition V: | 'Petitioner's rights under the Fourteenth Amendment to have Due Process and Equal Protections of the law were violated at trial.' |

(Dkt. # 8-4 at 6-7). The trial court denied the application (Dkt. # 8-4), and the OCCA affirmed (Dkt. # 8-5).

On April 4, 2011, Petitioner commenced this federal action by filing his pro se petition for writ of habeas corpus. (Dkt. # 1). Petitioner raises eight (8) grounds of error, as follows:

| | |
|---|---|
| Ground I: | Mr. Baxter was denied a fair trial in violation of the Sixth and Fourteenth Amendments by the trial court's error in not removing a convicted felon and otherwise biased juror for cause as promised and defense counsel's ineffectiveness in failing to verify his status and failure to challenge the felon for cause or remove him with a peremptory challenge. |
| Ground II: | An evidentiary harpoon denied Mr. Baxter a fair trial in violation of the Sixth and Fourteenth Amendments. |
| Ground III: | Prejudicial details of Mr. Baxter's prior conviction and suspended sentence and probation term prejudiced the sentence. |
| Ground IV: | Trial counsel was ineffective under the Sixth Amendment for failing to object and preserve the following issues for appellate review: |

        (a) failing to object to inclusion of G.G. as a juror,
        (b) Detective Geiger's prejudicial statement, and

<div style="margin-left: 2em;">

(c) failure to object to the state's introduction of Mr. Baxter's complete Judgment and sentence which (unlawfully) included details of his probation.

</div>

Ground V: The cumulative errors above denied Mr. Baxter a fair trial in violation of the Sixth and Fourteenth Amendments.

Ground VI: Appellate counsel was ineffective for filing a clearly defective affidavit in support of the Supplemented [sic] Brief provided by Mr. Baxter in violation of the Sixth and Fourteenth Amendments.

Ground VII: Petitioner was denied a fair appeal in violation of the Fourteenth Amendment when the state appeals court failed to consider the pro se supplemental brief submitted by Mr. Baxter.

Ground VIII: Petitioner was denied full appellate review and a fair appeal of whether the evidence was sufficient to sustain his conviction for Possession of a Firearms AFCF in violation of his Fourteenth Amendment rights.

(Dkt. # 1). Respondent argues that the OCCA's adjudication of Grounds I, III, IV, and V was not unreasonable or contrary to federal law, that the OCCA properly denied relief in Ground VI, and that Grounds II, VII, and VIII are state law issues not cognizable for federal habeas review. (Dkt. # 8).

## ANALYSIS

**A.      Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented his claims to the OCCA on direct and post-conviction appeal. Therefore, he has exhausted his state court remedies.

In addition, Petitioner has not met his burden of proving entitlement to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

**1.     Impartial jury[1] (Ground I)**

In Ground I, Petitioner argues that the trial court violated the Sixth and Fourteenth Amendments when it allowed "G.G. to serve as a juror, despite knowledge of his felony conviction." (Dkt. # 1 at 6).  Petitioner claims that this error allowed "a biased juror . . . to pass[] judgment and

---

[1]Petitioner's imbedded claim of ineffective assistance of trial counsel is also raised in Ground IV.  The Court addresses Petitioner's claims of ineffective counsel in Ground IV, below.

sentence," prejudicing Petitioner.  Id. Respondent argues that "[t]he OCCA reviewed these claims and determined that the inclusion of the juror" was harmless error.  (Dkt. # 8 at 8).

The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process, guarantee a criminal defendant in state court an "impartial jury." Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976) (citations omitted); Ross v. Oklahoma, 487 U.S. 81, 85 (1988). "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." Lockhart v. McCree, 476 U.S. 162, 184 (1986).  Any claim that the jury was impartial must focus on the jurors who ultimately sat.  Ross, 487 U.S. at 86.  The Sixth Amendment includes "the right to a jury capable and willing to decide the case solely on the evidence before it.'"  Rodriguez v. Roberts, 371 F. App'x 971, 973-74 (10th Cir. 2010) (unpublished)[2] (quoting United States v. Brooks, 569 F.3d 1284, 1288 (10th Cir.2009)).

The Supreme Court has stressed that the trial court is granted wide discretion in conducting voir dire in areas of inquiry that might tend to show juror bias.  Mu'min v. Virginia, 500 U.S. 415, 427 (1991).  The Tenth Circuit has specifically held that federal courts may reverse state court determinations of juror impartiality only upon a showing of "manifest error." Brecheen v. Reynolds, 41 F.3d 1343, 1350 (10th Cir. 1994); see also Cannon v. Gibson, 259 F.3d 1253, 1280 (10th Cir. 2001) (deferring to a trial judge's finding as to whether a potential juror is biased unless the finding is rebutted by clear and convincing evidence); accord Sallahdin v. Gibson, 275 F.3d 1211, 1224

_____

[2]This and other unpublished court decisions are cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

(10th Cir. 2002). This limited degree of review is justified by a trial judge's unique advantage in observing and evaluating the demeanor of jurors. Brecheen, 41 F.3d at 1350 (quoting Church v. Sullivan, 942 F.2d 1501, 1519 (10th Cir. 1991)). "The trial judge's finding as to whether a potential juror is biased is a finding of fact which is presumed correct unless rebutted by clear and convincing evidence." Cannon v. Gibson, 259 F.3d 1253, 1280 (10th Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).

In this case, the trial court asked the jury panel whether any had been accused of crimes. See, e.g., Dkt. # 10, Tr. Vol. I at 16. Juror G.G. responded that he had a bogus check charge in 1985, for which he served two years on probation. (Dkt. #10, Tr. Vol. I at 21-22). The court asked G.G. if the charge was a misdemeanor, to which juror G.G. responded, "[n]o." Id. at 22. The court called counsel to the bench and said, "I guess he is saying he has a felony conviction. I can have somebody run it real quick, but obviously if he does he is not qualified. I will check it out. I am going to have him answer the rest of the questions and then we will run him." Id. The court did not make a record of any follow-up and juror G.G. was seated on Petitioner's jury. (Dkt. # 10-1, Tr. Vol. II at 269). The OCCA found that "none of the views expressed by juror G.G. would appear to prevent or substantially impair the performance of his duties as a juror," and concluded that the error was harmless because Petitioner "fail[ed] to show prejudice . . . [and] actual bias." (Dkt. # 8-3).

The appropriate harmless error standard to be applied on habeas review is from Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). See Fry v. Pliler, 551 U.S. 112, 121-22 (2007); Herrera v. Lemaster, 301 F.3d 1192, 1199 (10th Cir. 2002). The standard "requires reversal only if [the error] had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 631 (quotation omitted). "[E]rrors which do not contribute to the verdict should not be reversed unless their effect is fundamentally unfair." United States v. Turrietta, 696 F.3d 972, 984 (10th Cir.

2012) (citing <u>Rose v. Clark</u>, 478 U.S. 570, 579 (1986)). Thus, Petitioner's burden is to show that the inclusion of G.G. on his jury had a substantial and injurious effect in the determination of the jury's verdict.

After reviewing the transcripts and considering the voir dire responses of juror G.G., the Court finds that the OCCA's decision that the inclusion of G.G. was harmless error is not contrary to federal law as interpreted by the Supreme Court. Petitioner fails to show that juror G.G.'s presence on the jury had a substantial and injurious effect or influence in determining the jury's verdict. Juror G.G.'s responses to questions during voir dire do not support Petitioner's claims that G.G. harbored bias. When asked about his conviction and how he felt about the District Attorney's office, juror G.G. stated, "I'm okay with it. I did wrong and I paid for it, you know." (Dkt. # 10, Tr. Vol. I at 82). Juror G.G. was also asked, "[i]f the state proved to you beyond a reasonable doubt all eight elements [of the crime charged against Petitioner], what would your verdict be?" Juror G.G. responded, "[g]uilty." <u>Id.</u> at 197. During defense counsel's voir dire, he asked the jury panel about the role opinions play in jury deliberation. He asked, "[d]o you think it's important during a process like this to . . . use your own common sense?" (Dkt. # 10-1, Tr. Vol. II at 221). After other jurors responded with affirmative responses, juror G.G. responded, "I feel the same way, that everybody forms somewhat of an opinion. They may not be confirmed on that, but I feel that you should be open and be able to listen to others' opinions and confirm what you had in your mind by firming it with others." <u>Id.</u> at 222. Defense counsel also asked juror G.G. whether it was important to hear both sides of the story and whether he would be able to make an informed decision if Petitioner chose not to testify during the trial. Juror G.G. responded affirmatively to both questions. <u>Id.</u> at 243. Juror G.G. stated that he would be able to wait until all the information was presented

and given court instructions before making a decision on a verdict.  Id. at 259.  Further, the record does not reflect a "manifest error" by the trial court when it failed to remove juror G.G. from the panel in violation of state law.  The OCCA's decision was not contrary to nor an unreasonable application of federal law as determined by the Supreme Court.  Habeas relief on Ground I is denied.

## 2. Evidentiary harpoon (Ground II)

In Ground II, Petitioner claims Detective Geiger "made a prejudicial and inflammatory statement which prejudiced the jury," and that the statement was an evidentiary harpoon, violating his Sixth and Fourteenth Amendment rights.  (Dkt. # 1).  On direct appeal, Petitioner argued that, during his testimony, Detective Geiger made a "voluntary and willfully jabbed" statement that was not inadvertent.  (Dkt. # 8-1 at 20).  Respondent argues this is a state law issue and relief is warranted only if Petitioner "can establish that the admission of the testimony rendered the trial fundamentally unfair."  (Dkt. # 8 at 21).  Further, Respondent argues that the finding by the OCCA that there was no evidentiary harpoon is entitled to deference under AEDPA.  Id. at 22.

A habeas court "'will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'"  Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)); see also Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990) ("errors in the admissibility of evidence are not grounds for habeas corpus relief absent fundamental unfairness so as to constitute a denial of due process of law").  Thus, to be entitled to habeas corpus relief, a petitioner must demonstrate that his trial was rendered fundamentally unfair by the admission of the challenged testimony.  See Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (holding that habeas corpus relief

cannot be provided on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results.") (quoting <u>Mayes v. Gibson</u>, 210 F.3d 1284, 1293 (10th Cir. 2000)); <u>Welch v. Sirmons</u>, 451 F.3d 675, 692 (10th Cir. 2006); <u>Payne v. Tennessee</u>, 501 U.S. 808, 825 (1991).

At Petitioner's trial, the prosecutor showed Detective Geiger two photographs of the gun recovered from Wal-Mart. (Dkt. # 10-2, Tr. Vol. III at 537). The prosecutor asked, "[c]an you explain to me the difference between [the two photographs]?" <u>Id.</u> Detective Geiger responded, "[t]he difference in this picture and that one is that . . . this is recovered and we have now rendered it safe so that we can photograph it and so forth and nobody else gets hurt with it." <u>Id.</u> It is the last phrase, "nobody else gets hurt with it," that Petitioner argues was an evidentiary harpoon. Petitioner claims this statement "implied that, contrary to the actual facts of the case, the weapon had been used to 'hurt' someone prior to Detective Geiger rendering it safe." (Dkt. # 8-1 at 20). Because there was no objection, the OCCA reviewed the claim for plain error and denied relief. (Dkt. # 8-3 at 4). The OCCA found "no evidence that Geiger's statement was noticed by those in the courtroom or interpreted in the prejudicial manner alleged on appeal." <u>Id.</u> The OCCA also stated that the "'harpoon' is only obvious to defense in this case, and only with the benefit of hindsight." <u>Id.</u>

After reviewing the record, the Court finds that Petitioner fails to demonstrate that this statement rendered his trial fundamentally unfair. Petitioner also fails to demonstrate that the OCCA's adjudication of this claim was an unreasonable application of federal law as determined by the Supreme Court. Accordingly, habeas corpus relief on Ground II is denied.

### 3.    Admission of prejudicial judgment and sentence (Ground III)

In his third ground of error, Petitioner claims he was prejudiced when the jury was informed that he received a suspended sentence and probation for his previous conviction.  (Dkt. # 1).  On direct appeal, Petitioner claimed this "acted to inflate the sentence" he received.  (Dkt. # 8-1 at 25).  Respondent argues that, while evidentiary rulings are issues of state law, the OCCA's decision was "not contrary to nor an unreasonable application of clearly established federal law."  (Dkt. # 8 at 19).  The OCCA reviewed Petitioner's claim for plain error and found that Petitioner's prior Judgment and Sentence should have been redacted to remove the sentence Petitioner previously received.  (Dkt. # 8-3 at 5).  Even so, the OCCA found the error harmless beyond a reasonable doubt because the facts "present [Petitioner] as a reckless individual with a propensity for crimes involving firearms, and it is clear from the verdict form that the jury intended to impose upon him the maximum sentence allowed by law."  Id. at 5-6.

As discussed above, the appropriate harmless error standard to be applied on habeas review is from Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  See supra (B)(1).  Petitioner bears the burden to show that the unredacted prior Judgment and Sentence had a substantial and injurious effect on the sentencing verdict.  Petitioner fails to meet his burden.  During the second stage of the trial, the prosecutor stated that the defendant stipulated to the prior conviction (Dkt. # 10-3, Tr. Vol. IV at 626), and summarized the facts as presented through direct and circumstantial evidence in the first stage of the case.  Id. at 626-28.  The prosecutor did not emphasize during closing arguments the sentences Petitioner received after his prior conviction.  The prosecutor told the jury, Petitioner "was a felon out committing another crime. . . . Consider the fact that the other crime[,] it was feloniously pointing a weapon."  Id. at 632.  Finally, the prosecutor asked the jury to "sentence

[Petitioner] to the upper range of this punishment.  This is a person who should never have a gun."
Id.  The jury recommended Petitioner receive a sentence of 10 years imprisonment.

On direct appeal, Petitioner stated that the "punishment range for possession of a firearm
[AFCF] is not less than one (1) year nor more than twenty (20) years."  (Dkt. # 8-1 at 32).  Yet,
Petitioner argued that the "10 years imprisonment was the result of inflamed emotions and societal
alarm, rather than appropriate sentencing considerations."  Id.  In his habeas petition, Petitioner fails
to point to, nor does the Court find, any part of the record that supports these claims.  The state
presented several witnesses during the trial who testified that they either saw Petitioner possess a
gun or that Petitioner exhibited behavior consistent with a person holding a gun in the waistband of
his pants.  To the extent Petitioner is arguing that he received an excessive sentence, the claim is
denied as the sentence received falls within the range allowed by state statute.  Dennis v. Poppel,
222 F.3d 1245, 1258 (10th Cir. 2000) (habeas court affords "wide discretion to the state trial court's
sentencing decision, and challenges to the decision are not generally constitutionally cognizable,
unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law").
Petitioner fails to demonstrate that the unredacted prior Judgment and Sentence had a substantial and
injurious effect in determining the jury's sentencing verdict.  Habeas relief on Ground III is denied.

**4.      Ineffective assistance of trial counsel (Ground IV)**

In Ground IV, Petitioner argues that his trial counsel was in effective for (1) failing to object
to the inclusion of juror G.G., (2) failing to object to Detective Geiger's prejudicial statement, and
(3) failure to object to the unredacted Judgment and Sentence.  (Dkt. # 1).  Petitioner argues that
these failures were "prejudicial and denied Mr. Baxter a fair appeal where the OCCA reviewed these
errors for plain error only."  Id. at 7.  On direct appeal, the OCCA denied Petitioner's claims of

14

ineffective assistance of trial counsel.  See Dkt. # 8-3 at 6.  The OCCA stated that "the decision by trial counsel not to object to juror G.G. fell well within the bounds of sound trial strategy and was clearly not deficient performance."  Id.  The OCCA reasoned that trial counsel possibly viewed G.G. "as someone who could identify with [Petitioner's] legal predicament."  Id. at 4 n.7.  The OCCA also "found no prejudice resulting from the inclusion of G.G. as a juror, the admission of Detective Geiger's statement, or the introduction of [Petitioner's] complete Judgment and Sentence."  Id. at 6 (citing Strickland, 466 U.S. at 694).  In response to the petition, Respondent argues that the OCCA's decision, that Petitioner was not prejudiced by any trial counsel's failures, "was not contrary to or an unreasonable application of federal law."  (Dkt. # 8 at 23).

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim is an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).  See 28 U.S.C. § 2254(d).  "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Richter, 131 S. Ct. at 785 (quoting Williams v. Taylor, 529 U.S. 364, 410 (2000) (O'Connor, J. concurring)).  "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id. at 786.  Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther."  Id.

Strickland sets out a two-pronged standard for review of ineffective assistance of counsel claims. A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S. Ct. 770, 792 (2011). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

After reviewing Petitioner's habeas claims and the OCCA's decision, the Court finds that Petitioner fails to show that the decision by the OCCA was contrary to or an unreasonable application of federal law as determined by the Supreme Court. As stated above, the record does

not support Petitioner's claims that juror G.G. harbored any bias or that his presence on the jury resulted in an impartial jury. The Court also concluded above that Detective Geiger's statement was not an evidentiary harpoon and Petitioner fails to show how the statement rendered his trial fundamentally unfair. Finally, Petitioner fails to show how he was prejudiced by the inclusion of the unredacted Judgement and Sentence. Therefore, Petitioner fails to satisfy the second prong of the Strickland standard – he fails to show he was prejudiced by trial counsel's failure to object. Habeas relief on Ground IV is denied.

### 5. Cumulative error (Ground V)

In the fifth ground of error, Petitioner claims that the "cumulative errors above denied [him] a fair trial in violation of the Sixth and Fourteenth Amendments." (Dkt. # 1 at 7). Respondent argues that the OCCA's decision rejecting this claim "was not an unreasonable application of clearly established federal law." (Dkt. # 8 at 28).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). The Tenth Circuit has repeatedly held that a cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review. Matthews v. Workman, 677 F.3d 1176, 1196 (10th Cir. 2009). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). "[T]he task 'merely' consists

of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting Rivera, 900 F.2d at 1470). Reversal is appropriate "[o]nly if the errors 'so fatally infected the trial that they violated the trial's fundamental fairness.'" Id. (quoting Matthews v. Workman, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009)).

In this case, the Court did not find two or more constitutional errors. Errors of state law, as identified by the OCCA, did not implicate Petitioner's federal constitutional rights. As a result, there is no basis for a cumulative error analysis. Petitioner fails to show that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d).

### 6.      Ineffective assistance of appellate counsel (Ground VI)

In Ground VI, Petitioner claims that his "[a]ppellate counsel was ineffective for filing a clearly defective affidavit in support of the Supplemented [sic] Brief provided by [Petitioner] in violation of the Sixth and Fourteenth Amendments." (Dkt. # 1 at 7). Petitioner argues that he was prejudiced by appellate counsel's failure to "comply with Rule 3.4(E) of the Rules of the Oklahoma Court of Criminal Appeals by not alleging in her affidavit she had reviewed [Petitioner's] pro se arguments." Id. Respondent argues that the OCCA's determination that appellate counsel was not ineffective was reasonable because the "pro se supplemental brief . . . did not raise any meritorious claims." (Dkt. # 8 at 30).

Petitioner raised the claim of ineffective assistance of appellate counsel in his application for post conviction relief. See Dkt. # 8-4. In resolving Petitioner's claim of ineffective assistance

of appellate counsel, the OCCA stated, "Petitioner has not established that appellate counsel's performance was deficient, or that the result of his trial and appeal was not reliable and fair." (Dkt. # 8-5 at 2). The OCCA cited <u>Strickland</u>, but also stated "the fact appellate counsel fails to recognize or raise a claim, regardless of merit, is not and cannot alone be sufficient to establish ineffective assistance, or to preclude enforcement of a procedural default." <u>Id.</u> The OCCA's statement deviates from the controlling federal standard.

The correct standard when analyzing ineffectiveness of appellate counsel requires courts to "look to the merits of the omitted issue." <u>Cargle v. Mullin</u>, 317 F.3d 1196, 1202-05 (10th Cir. 2003) (explaining that the merit of the omitted claim is the focus of the appellate ineffectiveness inquiry, omission of a sufficiently meritorious claim can, in itself, establish ineffective assistance, and thus, the state court's rejection of an appellate ineffectiveness claim on the basis of the legal premise invoked here is wrong as a matter of federal constitutional law). <u>See</u> <u>also</u> <u>Malicoat v. Mullin</u>, 426 F.3d 1241, 1248 (10th Cir. 2005) (following <u>Cargle</u>). Because the OCCA's analysis of Petitioner's allegations of ineffective assistance of appellate counsel deviated from the controlling federal standard, its analysis is not entitled to deference on habeas review. <u>Cargle</u>, 317 F.3d at 1205; <u>see also</u> <u>Malicoat</u>, 426 F.3d at 1248. Therefore, the Court will analyze Petitioner's claim of ineffective assistance of appellate counsel de novo.

Claims of ineffective assistance of counsel are governed by the two-pronged standard announced in <u>Strickland</u>. <u>See</u> <u>United States v. Cook</u>, 45 F.3d 388, 392 (10th Cir. 1995), <u>abrogated on other grounds by</u> <u>Neill v. Gibson</u>, 278 F.3d 1044 (10th Cir. 2001). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct

appeal, the court first examines the merits of the omitted issue.  <u>Hawkins v. Hannigan</u>, 185 F.3d

1146, 1152 (10th Cir. 1999).  The Tenth Circuit has explained that,

> [i]f the omitted issue is so plainly meritorious that it would have been unreasonable
> to winnow it out even from an otherwise strong appeal, its omission may directly
> establish deficient performance; if the omitted issue has merit but is not so
> compelling, the case for deficient performance is more complicated, requiring an
> assessment of the issue relative to the rest of the appeal, and deferential consideration
> must be given to any professional judgment involved in its omission; of course, if the
> issue is meritless, its omission will not constitute deficient performance.

<u>Cargle</u>, 317 F.3d at 1202 (footnote omitted) (citation omitted); <u>see also</u> <u>Parker v. Champion</u>, 148

F.3d 1219, 1221 (10th Cir. 1998).  In addition,

> [T]o satisfy <u>Strickland</u>'s deficient performance element, a habeas petitioner 'must .
> . . show that his appellate counsel was objectively unreasonable in failing to find
> arguable issues to appeal – that is, that counsel unreasonably failed to discover
> nonfrivolous issues and to file a merits brief raising them.'  To satisfy <u>Strickland</u>'s
> prejudice element, a petitioner must establish 'a reasonable probability that, but for
> his counsel's unreasonable failure to raise an issue, he would have prevailed on his
> appeal.'

<u>Kidwell v. Martin</u>, 480 F. App'x 929, 933 (10th Cir. 2012) (unpublished) (quoting <u>Smith v. Robbins</u>,

528 U.S. 259, 285 (2000)).

The filing of pro se supplemental briefs is governed by Rule 3.4(E), <u>Rules of the Oklahoma

Court of Criminal Appeals</u>.  The rule requires appellate counsel to file an affidavit containing

specific representations stating that appellate counsel has reviewed the legal arguments in the pro

se brief and determined that they raise viable, non-frivolous legal issues and certify that the

arguments as presented comply with the rules of the court.  <u>Id.</u>  In this case, appellate counsel

submitted an affidavit stating that she "review[ed] the legal authority cited in Appellant's argument.

While not necessarily in agreement with Appellant's arguments, Appellate counsel has agreed that

the principles of law cited in Proposition I of his Supplemental Brief may be applied to the facts set forth in all three of Appellant's Supplemental Propositions."  (Dkt. # 8-9).

In its Order denying leave to file the pro se supplemental brief, the OCCA listed three deficiencies in the affidavit filed by Petitioner's appellate counsel.  First, the affidavit "does not state that the attorney has reviewed Appellant's pro se propositions to ensure only viable, non-frivolous arguments have been presented."  (Dkt. # 8-11 at 2).  Next, the affidavit "does not certify that the arguments and authority submitted comply with the Rules of this Court."  Id.  Finally, the affidavit does not "list[] any reasons for recommendation that the pro se supplemental arguments be accepted."  Id.  All of these components are required for compliance with Rule 3.4(E) of the Rules of the Oklahoma Court of Criminal Appeals.  See OKLA. STAT. tit. 22, ch. 18.  Because appellate counsel's affidavit was deficient, the OCCA refused to consider the claims raise in the pro se supplemental brief.

Even if appellate counsel performed deficiently in preparing her affidavit, Petitioner is not entitled to habeas corpus relief on his claims of ineffective assistance of appellate counsel unless he was prejudiced by counsel's deficient performance.  As discussed above, Petitioner must demonstrate that had the OCCA considered the claims raised in his pro se supplemental brief, he would have prevailed on his appeal.  In his pro se supplemental brief, Petitioner raised three propositions of error, as follows:

Proposition 1:  The evidence presented was insufficient to sustain Appellant's conviction of possession of a firearm after former conviction of a felony.

Proposition 2:  Detective Geiger's assumption that the firearm found May 11, 2007 in Wal-Mart belonged to Appellant lacked probable cause.

Proposition 3: Mr. Baxter['s] 14th Amendment right to due process of law was violated because he was denied equal protection of the law within the jurisdiction of this court.

(Dkt. # 8-10 at 2). After reviewing the record, the Court finds that the propositions raised in Petitioner's pro se supplemental brief lack merit.

In Proposition 1 of the pro se supplemental brief, Petitioner argued that "[t]he only way" he could be charged with possession of a firearm "is that he would have had to possess the firearm the only time he was at the Wal-Mart [on] May 10, 2007." (Dkt. # 8-10 at 2). Petitioner stated that none of the witnesses, other than Bogue, actually saw Petitioner with a gun at the Wal-Mart. Id. at 2-4. Petitioner also argued that the circumstantial evidence presented at trial lacked consistency. Id. at 5 (citing Easlick v. State, 90 P.3d 556 (Okla. Crim. App. 2004)). Petitioner concluded by stating "[t]here was no evidence presented that [Petitioner] had actual physical custody of the Llama .45 caliber pistol that was found in Wal-Mart May 11, 2007." Id. at 6.

The OCCA reviews sufficiency of the evidence claims under the test set forth in Jackson v. Virginia, 443 U.S. 307 (1979). See Peninger v. State, 721 P.2d 1338, 1341 (Okla. Crim. App. 1986). The test set forth by the Supreme Court states that evidence is sufficient when, "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." Id. Petitioner was charged with "possession of firearm after former commission of a felony by unlawfully, feloniously and willfully possess or had in his control on his person a certain gun to wit, Llama .45 caliber pistol." (Dkt. # 10-3, Tr. Vol. IV at 616); see also OKLA. STAT. tit. 53, § 1283. The charge did not rely on whether Petitioner possessed a firearm at the Wal-Mart. Bogue testified that he saw Petitioner with a handgun and that he slid a clip into the handgun and chambered a bullet while they drove around

the Sugarberry Apartment complex. See Dkt. # 10-1, Tr. Vol. II at 294. Bogue also identified a photograph of the gun recovered at Wal-Mart as the gun he saw in Petitioner's hand. Id. at 308. Additionally, both Broken Arrow Police Officers testified that Petitioner exhibited physical characteristics of someone holding something in his waistband while running into the shoe aisle, but not when Petitioner exited the shoe aisle. Mitchell and Ebady also testified that Petitioner had his hand at his waistband while he was standing outside the Wal-Mart and was acting paranoid. Therefore, after reviewing the testimony presented at trial, the Court concludes that a reasonable juror could have found the essential elements of the crime charged beyond a reasonable doubt. Thus, the Court finds no merit in Proposition 1.

In Proposition 2 of the pro se supplemental brief, Petitioner argued that "Detective Geiger's assumption that the firearm found May 11, 2007 in Wal-Mart belonged to [Petitioner] lacked probable cause." (Dkt. # 8-10 at 1). Petitioner argued the proper standard to "determin[e] whether an officer has sufficient reasonably trustworthy information to constitute probable cause . . . requires [the] officer to look to the 'totality of the circumstances.'" Id. at 7 (citing United States v. Morgan, 936 F.2d 1561, 1569 (10th Cir. 1991)). Petitioner claimed "Detective Geiger failed to examine the totality of the circumstances by ignoring the alleged victim's statement that he saw Appellant load the weapon." Id. Petitioner argued that because Detective Geiger failed to have the clip fingerprinted, he ignored readily available exculpatory evidence. Id. Finally, Petitioner argued that the shoe aisle was searched twice the night of his arrest and the "shoe department was [not] quarantined from the public before, during or, after the police conducted their search and deemed

there was no firearms [sic] to be found." <u>Id.</u> at 8. Thus, Petitioner argued, Detective Geiger had no probable cause to believe Petitioner committed a crime.[3]

"The test for probable cause is not reducible to 'precise definition or quantification.'" <u>Florida v. Harris</u>, 133 S. Ct. 1050, 1055 (2013) (quoting <u>Maryland v. Pringle</u>, 540 U.S. 366, 371 (2003)). "All we have required is the kind of 'fair probability' on which 'reasonable and prudent people, not legal technicians, act.'" <u>Id.</u> (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 231 (1983)). Here, the circumstances surrounding Petitioner's arrest support the existence of probable cause. Petitioner ran as soon as he saw police officers in the Wal-Mart. When he ran, he was clutching his waistband. Petitioner evaded capture by running through the clothing and shoe departments and finally out the front entrance into the parking lot. Once in the parking lot, Petitioner shed his distinctive shirt and ran around to the rear of the shopping center. Police then found Petitioner hiding in a dumpster behind the shopping center after a bystander saw Petitioner jump in the dumpster. Based on the entirety of the circumstances, a reasonable and prudent person would believe that probable cause existed to arrest and charge Petitioner with felonious possession of a firearm. There is no merit in Proposition 2.

Finally, in Proposition 3, Petitioner claimed that he was denied due process and equal protection. (Dkt. # 8-10 at 1). Petitioner argued that exculpatory evidence was intentionally disregarded by Detective Geiger and the prosecutor. <u>Id.</u> at 9. Petitioner cited <u>Holland v. United States</u>, 348 U.S. 121 (1954), as support for his claims, stating that "[d]efendants are protected from unjust prosecutions by requiring proof for sufficiency, where net worth is provided by circumstantial

_____

[3]The Court notes that Petitioner never claims the gun recovered was not his gun nor does he claim he never had a gun at the apartment complex.

evidence, that [the] Government has investigated leads which support a taxpayer's claims of innocence." (Dkt. # 8-10 at 9). Petitioner then stated "Mr. Baxter is in fact a taxpayer." Id.

Petitioner's reliance on Holland is unpersuasive. In Holland, two defendants convicted of tax evasion argued that the government improperly determined their net worth for purposes of the crime charged. The defendants claimed that the government failed to investigate leads provided by defendants as to the original source of cash when it determined their net worth. Holland, 348 U.S. at 135. The Supreme Court stated that "[w]hen the Government fails to show an investigation into the validity of such leads, the trial judge may consider them as true and the government's case insufficient to go to the jury." Holland, 348 U.S. at 136. However, the Court concluded that "[e]ven if these leads [of the source of the cash] were assumed to be true, the Government's evidence was sufficient to convict," in light of the thorough investigation. Id. In this case, Petitioner argued that because Detective Geiger did not request a fingerprint analysis on the gun found at the Wal-Mart, Petitioner cannot be linked to the gun. However, even assuming there was no fingerprint analysis, the evidence was sufficient to convict Petitioner of possession of a firearm. The Court finds no merit in Proposition 3 of the pro se supplemental brief.

After reviewing the claims raised in Petitioner's pro se supplement brief, the Court finds the claims lack merit. As a result, Petitioner cannot satisfy the prejudice prong of Strickland. See Kidwell, 480 F. App'x at 933. Petitioner cannot show he would have prevailed on appeal; therefore, his claim of ineffective assistance of appellate counsel fails. Habeas relief on Ground VI is denied.

### 7. OCCA appellate review (Grounds VII and VIII)

In Grounds VII and VIII, Petitioner claims he was denied a fair appeal and full appellate review when the OCCA denied leave to file his pro se supplemental brief. (Dkt. # 1 at 8). These

claims challenge Oklahoma procedural and statutory provisions. Respondent argues that these are matters of state law not cognizable on habeas review. (Dkt. # 8 at 40).

There is no constitutional right of appeal. See Murray v. Giarratano, 492 U.S. 1, 17-18 (1989). The due process clause of the Fourteenth Amendment does not require a state to provide an as-of-right appeal of a state court conviction. See McKane v. Durston, 153 U.S. 684, 687 (1894). If a state provides appellate review as part of its system of adjudicating guilt or innocence, the appellate process must satisfy due process and equal protection standards. See Griffin v. Illinois, 351 U.S. 12, 18 (1956). Oklahoma grants a statutory right to appeal in OKLA. STAT. tit. 22, § 1051. See Robinson v. State, 106 P.2d 531, 532 (Okla. Crim. App. 1940) ("An appeal is not a matter of inherent right. It is a right extended to the defendant by the favor of the State."). Thus, "at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations." Griffin, 351 U.S. at 18. To establish a due process violation, a petitioner is required to make some showing of prejudice. Harris v. Champion, 15 F.3d 1538, 1559 (10th Cir. 1994). Even if the state violated its own law, a petitioner "must show that the alleged violation of state law denied him due process . . . that is, it must shock the judicial conscience." Aycox v. Lytle, 196 F.3d 1174, 1179-80 (10th Cir. 1999) (citations omitted).

Here, Petitioner fails to show he was prejudiced when the OCCA denied leave to file his pro se supplemental brief. The OCCA denied the pro se supplemental brief because Petitioner's appellate counsel failed to comply with Rule 3.4(E). Petitioner fails to show that the OCCA violated its own rules when it denied his pro se supplemental brief. Further, Petitioner failed to show that the decision, assuming it violated state law, shocks the judicial conscience. Lastly, in light of the Court's finding no merit in the propositions raised in Petitioner's pro se supplemental brief,

Petitioner cannot demonstrate prejudice. Petitioner's claims for relief in Grounds VII and VIII fail. Habeas relief is denied.

## C.     Certificate of appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. <u>See</u> <u>Dockins v. Hines</u>, 374 F.3d 935 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.      A certificate of appealability is **denied**.

3.      A separate judgment shall be entered in this matter.


**DATED** this 29th day of May, 2014.

_Claire V. Eagle_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE